O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARODY TOME RAMOS,<br><br>Petitioner,<br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al,<br><br>Respondents. | Case No.: 5:26-cv-00064-MEMF-ADS<br><br>**ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 2]** |

Before the Court is the Motion for Temporary Restraining Order filed by Petitioner Arody Tome Ramos. Dkt. No. 2 ("Motion"). For the reasons stated below, the Motion is GRANTED.

/ / /

/ / /

/ / /

I. **Background**

    A. **Factual Background**[1]

Petitioner Arody Tome Ramos is a citizen of Cuba. Dkt. No. 1 at 2 ("Petition"). On July 17, 1980, when he was fifteen, Petitioner and his family arrived legally as refugees from Spain on a visa issued by the U.S., and on or about July of 1981, when Petitioner was sixteen, he was granted Legal Permanent Residence status. *Id.* On May 4, 1984, Petitioner was convicted in the Los Angeles County Superior Court of First Degree Murder, in violation of California Penal Code Section 187(a), and he was sentenced to twenty-five years to life in prison. *See id.* at 3; Palacios Decl. ¶ 5, Dkt. No. 11-1. In November 2019, Petitioner was granted parole. *See* Petition at 2.[2] Then, in April 2020, Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") and placed into removal proceedings; ICE alleged that he was removable under Section 237(a)(2)(A)(i) of the Immigration and Nationality Act on the ground that he had been convicted of a crime of moral turpitude committed within five years after admission. *See id.*; Palacios Decl. ¶ 7. On July 16, 2020 he was ordered removed to Cuba, and that order later became final. *See* Motion at 3; Palacios Decl. ¶¶ 7-8. He was released on an Order of Supervision ("OSUP") on October 22, 2020. Application at 4.

Then, on December 3, 2025, during a routine check-in with ICE, ICE officials detained Petitioner, revoked his release, and re-confined him in ICE custody. *Id.* at 4. For more than five years, until December 3, 2025, Petitioner, who is a father, husband, and grandfather, has lived without incident in the United States; he enrolled in college, is pursuing a Ph.D. in applied psychology, and has worked in an upholstery business. *See id.* at 3.

///

///

---

[1] Unless otherwise indicated, the following factual background is derived from the Petition for a Writ of Habeas Corpus. Dkt. No. 1 ("Petition"). This Court is not, at this time, making a final determination as to the veracity of the facts stated therein.

[2] Respondents do not mention Petitioner's parole and only contend that on April 9, 2020, Petitioner was released from prison and was taken into ICE custody. *See* Palacios Decl. ¶ 6.

### B. Procedural History

On January 5, 2026, Petitioner—acting *pro se*—filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this matter. *See* Petition. On the same day, Petitioner filed the Motion. *See* Motion. This Court accordingly set an expedited briefing schedule. *See* Dkt. No. 6. On January 9, 2026, Respondents filed a response to Petitioner's Motion. *See* Dkt. No. 11 ("Response"). On January 20, 2026, a Notice of Appearance was filed by Federal Public Defender Margaret Farrand on behalf of Petitioner. *See* Dkt. No. 15. On January 26, 2025, Petitioner filed a reply brief. *See* Dkt. No. 18 ("Reply"). The Court held a hearing on February 4, 2026.

## II. Applicable Law

### A. Preliminary Injunctions

The analysis that courts must perform for temporary restraining orders and preliminary injunctions is "substantially identical." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,* 240 F.3d 832, 839 (9th Cir. 2001). Federal Rule of Civil Procedure 65 sets forth the procedure for issuance of a preliminary injunction. *See* Fed. R. Civ. P. 65(b). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To qualify for injunctive relief, Plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that he will suffer irreparable harm without an injunction; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20. This Court cannot grant the preliminary injunction "unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).

The Ninth Circuit has held that injunctive relief may issue, even if the moving party cannot show a likelihood of success on the merits, if "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Under either formulation of the principles, preliminary injunctive relief should be denied if the probability of success on the merits is low. *See Martin v. Int'l Olympic Comm.*, 740 F.2d 670,

675 (9th Cir. 1984) ("[E]ven if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.").

### B. Habeas Petitions in the Immigration Detention Context

District Courts are "generally prohibit[ed]" from "entering injunctions that order federal officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out" certain provisions of the INA, found in 8 U.S.C. Sections 1221 to 1232. *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022). But "lower courts retain the authority to 'enjoin or restrain the operation of' the relevant statutory provisions 'with respect to the application of such provisions to an individual [noncitizen] against whom proceedings under such part have been initiated.'" *Id.* (quoting 8 U.S.C. § 1252(f)(1)). This Court, therefore, may grant relief in "individual cases." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481–82 (1999).

Once an immigrant has been "released under an order of supervision," the following laws govern. 8 U.S.C. § 241.13(i)(1). To "revoke [a noncitizen]'s release under this section and return the [noncitizen] to custody," the Service must "determine[] that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Id.* § 241.13(i)(2). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and is entitled to an initial interview after the immigrant's return to custody to allow the immigrant to respond, submit evidence, or otherwise demonstrate that "there is no significant likelihood he or she be removed in the reasonably foreseeable future." *Id.* § 241(i)(3).

## III. Discussion

### A. This Court has jurisdiction.

Respondents did not challenge this Court's jurisdiction in its Response. *See generally* Response. The Court therefore understands that the Respondents concede this Court has jurisdiction. Despite this concession, this Court has nevertheless considered the jurisdiction-stripping provisions of the INA to determine whether this Court has jurisdiction.

As this Court has explained *supra*, it lacks authority to enjoin the Government or its subdivisions to "take or to refrain from taking actions to enforce, implement, or otherwise carry out"

certain provisions of the INA. *Aleman Gonzalez*, 596 U.S. at 550. But it may still enjoin the operation of statutory provisions as they apply to an individual noncitizen in removal proceedings. *Id.* Put another way, the Supreme Court has recognized that this Court's jurisdiction to enter individual habeas relief, where appropriate, does not improperly bear on the Government's ability to carry out immigration policy decisions.

This case does not challenge the execution of a final removal order—Petitioner merely alleges that, when Respondents re-detained him, they did not afford him the process he was due. *See* Motion at 12-14. That inquiry is entirely independent of whether the government may execute the final removal order. With this framework in mind, the three jurisdiction-stripping statutes cited by the Government in similar cases are inapposite.

Section 1252(g) states that no court may hear a non-citizen's case "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against [a noncitizen]." The Supreme Court has rejected "the unexamined assumption that § 1252(g) covers the universe of deportation claims," and has instead endorsed a "much narrower" read that is confined to the "three discrete actions" listed above. *Reno*, 525 U.S. at 482. With this reading in mind, Section 1252(g) does not apply here. Neither the instant Motion nor the Petition stem from (or challenge) the commencement of proceedings, adjudication of a case, or the execution of a removal order. Instead, they seek that this Court find that the *manner* in which Petitioner was re-detained was in violation of his constitutional and statutory protections. Thus, nothing in this Court's ruling today (or Petitioner's requested relief) prevents Petitioner's re-detention or removal.

Moreover, Section 1252(a)(5) states that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter." And Section 1252(b)(9) states that "[j]udicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien from the United States . . . shall be available only in judicial review of a final order under this section." The Ninth Circuit has clarified that these two provisions only "channel judicial review *over final orders of removal* to the courts of appeals." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added). And, again, Petitioner has

not requested this Court to review his removal order itself. Neither the Petition nor the TRO before this Court contest the basis of the final removal order. *See* Motion at 17. Nor does this Court intend to call into question the merits of the Government's reasons, or the basis of the Government's authority, to remove Petitioner.

In sum, this Court concludes that it has jurisdiction to hear the habeas petition and consider the granting of injunctive relief as a preliminary matter, if appropriate.

### B. Petitioner pleaded a factual basis for relief.

Respondents contend that Petitioner did not plead a factual basis for relief because his Petition is "conclusory and vague, [does not state specific factual allegations,] and the Petitioner misstates the facts." *See* Response at 5. However, Petitioner was *pro se* when he filed his Petition and Motion, and this Court must "liberally construe" such filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also* Reply at 3 n.1, 12. In fact, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *See Erickson*, 551 U.S. at 94 (quoting *Estelle*, 429 U.S. at 106). When liberally construing Petitioner's Petition, the Court finds that Petitioner has sufficiently stated a factual basis for relief, because Petitioner has alleged in his Petition that he has "been in custody for approximately seven (7) months" in violation of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and that he was not given a chance to contest the revocation of his supervised release in an informal interview in violation of procedural due process and 8 C.F.R. §§ 241 (*I*)(1); 241.3(i)(3). *See* Petition at 7-11; *see also* Reply at 3 n.1, 12-13. Therefore, the Court finds Petitioner has sufficiently pleaded a factual basis for granting relief.

### C. Applying the *Winter* factors, Petitioner is entitled to a temporary restraining order.

As discussed above, the standard for granting a temporary restraining order and a preliminary injunction are substantively identical. Given the urgency of this matter, this Court has only considered whether Petitioner is entitled to a temporary restraining order. Having determined below that he is entitled to a temporary restraining order, the Court will issue an order to show cause as to

why a preliminary injunction should not issue, which should permit further development of the record and additional briefing.

The Petition advances three grounds upon which a temporary restraining order should be granted. First, Petitioner argues that there is no significant likelihood of his removal to Cuba in the reasonably foreseeable future. *See* Motion at 11-12. Second, Petitioner argues that his re-detention violated his Fifth Amendment right to procedural due process as well as the relevant regulations—namely, 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13—because the Government did not follow the requisite steps to revoke Petitioner's release: notice of the reasons for the detention and a prompt informal interview. *See id.* at 9-10, 12-14. Third, he argues that his removal to a third country, Mexico, would be in violation of procedural due process because he has not been given an opportunity to be heard and show "a reasonable fear of torture or persecution in Mexico." *See* Reply at 14-16. The Court applies the *Winter* factors to Petitioner's claims below.[3]

      i. The first *Winter* factor, likelihood of success on the merits, is met.

Petitioner argues that he is entitled to release because the Government violated both due process and INA regulations by (1) re-detaining him without notice and an opportunity to be heard, and (2) proceeding to remove him to a third country without notice and an opportunity to be heard. For the reasons below, this Court finds he is likely to succeed on the merits of his claims.

"'The Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). Accordingly, immigration detainees pending removal are "entitled to notice and opportunity to be heard 'appropriate to the nature of the case.'" *Id.* (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

---

[3] Respondents contend that Petitioner is not likely to succeed on his APA claims, *see* Response at 6-7, and in his Reply, Petitioner contends that he is likely to succeed on an APA claim, *see* Reply at 10-11. However, the Court finds that Petitioner merely states that there is a violation of the APA, but even when liberally construed, he did not substantively argue an APA violation in his Motion. *See* Motion at 5, 8-9. Thus, the Court need not address whether Petitioner can succeed on an APA claim.

> a. *Petitioner is likely to succeed on his claim that he was detained in violation of his right to due process.*

Petitioner asserts that he was re-detained in violation of his right to due process because he was not given notice and an opportunity to be heard on his re-detention. Respondents do not address whether Petitioner has the right to notice and the opportunity to be heard on his re-detention; instead, they focus on Petitioner's statement that he was not provided notice and point out that he *was* provided with a "detailed" Notice of Revocation of Release upon his re-detention. Response at 5. It does not appear to this Court that the Notice complied with the requirements of due process. Consistent with *J.G.G.*, due process at a minimum would appear to require that ICE comply with its own regulations concerning detention. The regulations—namely, 8 C.F.R. §§ 241.13(i)(2), (3)—permit ICE to re-detain where "on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." § 241.13(i)(2). Pursuant to section 241.13(i)(3), Petitioner was to be "notified of the reasons for revocation of his . . . release." § 241.13(i)(3).[4]

But the Notice of Revocation of Release merely stated:

> ICE has determined that you can be expeditiously removed from the United States pursuant to the outstanding order of removal against you. On July 16, 2020, you were ordered removed by an immigration official and you are subject to an administrative final order of removal. It is expected that you will be removed to Cuba in the foreseeable future."

*See* Dkt. No. 11-2 ("Notice of Revocation"). This notice does not state how Petitioner is expected to be removed to Cuba in the foreseeable future and what has clearly "changed" from his prior detention in 2020, where Respondents had also sought to deport him to Cuba. *See* Reply at 7, 12. Perhaps even more significant—this notice appears to be false. Respondents in their Response give no indication whether it was ever true that Petitioner was to be "removed to Cuba in the foreseeable future," and it is certainly not true now—to the contrary, Respondents state they now expect to remove Petitioner to Mexico. *See* Response at 3. Thus, Petitioner is likely to succeed in showing that this notice failed to meet the minimum requirements of due process.

---

[4] The Court notes that 8 C.F.R. § 241.4(*l*)(1) appears to have the same requirements.

Even assuming Petitioner was provided with the requisite notice, it is undisputed that he was not given an opportunity to be heard. Pursuant to the regulations—again, 8 C.F.R. § 241.13(i)(3)—and the Notice of Revocation itself, Petitioner was to be provided with "an initial informal interview promptly after his . . . return to Service custody to afford [him] an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). *See also* Notice of Revocation ("You will promptly be afforded an informal interview at which you will be given the opportunity to respond to the reasons for the revocation and to provide any evidence to demonstrate that your removal is unlikely."). Respondents do not rebut Petitioner's allegation that he was never given an informal interview or other opportunity to be heard, and thus concede that he was never given an opportunity to be heard on the revocation "in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also* Motion at 14; Reply at 7. Petitioner is therefore likely to succeed in showing that he was not given an opportunity to be heard on his re-detention.

Accordingly, the Court finds that Petitioner is likely to succeed in his claim that Respondents violated procedural due process and §§ 241.13(i)(2), (3) when they revoked his OSUP without notice and an opportunity to be heard.[5]

---

[5] On October 22, 2020, Petitioner was released from ICE detention and placed on an Order of Supervised Release due to being a member of the *Wolf* class-action subclass. *See* Motion at 4; *see also Roman v. Wolf*, No. EDCV2000768TJHPVCX, 2020 WL 1952656 (C.D. Cal. Apr. 23, 2020), *aff'd in part, vacated in part sub nom. Hernandez Roman v. Wolf*, 829 F. App'x 165 (9th Cir. 2020), and *supplemented*, No. EDCV 20-00768 TJH (PVCX), 2020 WL 5797918 (C.D. Cal. Sept. 29, 2020). Respondents contend that Petitioner's re-detention is justified and in full compliance with the settlement agreement because it was "to execute an administratively final order of removal." *See* Response at 1-2; Palacios Decl. ¶¶ 9-10, Dkt. No. 11-1; Ex. 3 at 9-10, Dkt. No. 11-3 (*Wolf* Settlement agreement). But the portion of the settlement agreement cited states that Respondents have to "make best efforts to not re-detain under the immigration laws," *see* Ez. 3 at 9, and as discussed above, Respondents have not complied with the immigration laws by failing to give Petitioner notice and an opportunity to be heard in violation of §§ 241.13(i)(2), (3); *see also* Reply at 9.

Moreover, the settlement agreement states that re-detention is only allowed if the class member "violated any material condition of release in a manner indicating that the Class Member presents a danger to persons or property, or poses a risk of flight as determined by ICE/ERO," "fails or has failed to appear for an immigration court hearing and was ordered removed by an immigration judge," "has been arrested [following release] by local, state, or federal authorities for new criminal conduct," or has failed to comply with their terms of probation or parole. *See* Ex. 3 at 11-12. And it is undisputed that Petitioner never violated any condition of release, failed to appear for any hearing, was arrested, or failed to comply with probation or parole. *See* Reply at 10; Response at 1-2. Accordingly, the *Wolf* Class Action Settlement cannot be grounds for re-detaining Petitioner.

> b.  *Petitioner is likely to succeed on his claim that he is entitled to be heard prior to any removal to Mexico.*

Petitioner acknowledges that Respondents have indicated their intent to remove him to Mexico, and asserts that to do so without giving him an opportunity to be heard would also be in violation of due process. Again, Respondents do not address whether due process entitles Petitioner to be heard on the question of his removal to Mexico. Rather, they focus on the fact that they have properly advised him that they intend to remove him to Mexico, that removal to a third country is lawful, and that detention pending removal to a third country is lawful. *See* Response at 7-8.

It is well-established that the Government is prohibited from removing a noncitizen to any third country where they may be persecuted or tortured. *See* 8 U.S.C. § 1231(b)(3)(A). "If [noncitizens] would face persecution or other mistreatment in [a third country], they have a number of available remedies: asylum; withholding of removal; relief under an international agreement prohibiting torture; and temporary protected status." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (internal citations omitted).

By the same token, it is well-established that due process requires that, at the very least, a noncitizen being removed to a third country be given an opportunity to be heard on whether they are subject to persecution or torture in that third country. In fact, the Ninth Circuit has held that failing to provide a noncitizen an opportunity to address his fear of persecution in the country in which he is being removed is a due process violation: "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both [immigration] regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999).

Despite these requirements, Respondents do not contend that Petitioner was asked whether he feared being persecuted or tortured in Mexico. *See* Response at 7-8; Reply at 14-17. In fact, it appears that Respondents' position is that noncitizens must spontaneously volunteer their fear of persecution or torture; Respondents intentionally refrain from asking them. *See* Memorandum from Todd M. Lyons, Acting Director, U.S. Immigr. and Customs Enf't, to all ICE Employees (July 9, 2025),

https://storage.courtlistener.com/recap/gov.uscourts.mad.282404/gov.uscourts.mad.282404.190.1.pdf [https://perma.cc/P9N8-5Q3M] ("ERO will not affirmatively ask whether the [noncitizen] is afraid of being removed to the country of removal."). The fact that Respondents' own policy dictates additional procedures if a noncitizen states a fear demonstrates that Respondents agree that Petitioner is entitled to be heard prior to the removal taking place.

Petitioner contends that he should be given a minimum of ten days to raise a fear-based claim for CAT protection prior to removal. *See* Reply at 18. Under *Mathews*, the procedural steps must "be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard,' to insure that they are given a *meaningful* opportunity to present their case." *Mathews*, 424 U.S. at 349 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 268-69 (1970)) (emphasis added). Other courts have found a ten- or fifteen-day timeframe reasonable because it "reflect[s] the agencies' determination—on two separate occasions spanning a period of nearly 20 years—of an appropriate period of time during which a[] [noncitizen] should be permitted to object to an adverse determination." *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 393 n.49 (D. Mass.), *opinion clarified*, No. CV 25-10676, 2025 WL 1323697 (D. Mass. May 7, 2025), and *opinion clarified*, No. CV 25-10676, 2025 WL 1453640 (D. Mass. May 21, 2025), *reconsideration denied sub nom. D.V.D v. U.S. Dep't of Homeland Sec.*, 786 F. Supp. 3d 223 (D. Mass. 2025); *see e.g., Vaskanyan v. Janecka*, No. 5:25-CV-01475, 2025 WL 2014208, at *1 (C.D. Cal. June 25, 2025); *Kumar v. Wamsley*, No. C25-2055, 2025 WL 3204724, at *8 (W.D. Wash. Nov. 17, 2025). "Ten days is also the timeframe in which reasonable fear interviews are to be completed in other contexts pursuant to regulation." *Kumar*, 2025 WL 3204724, at *8 (citing 8 C.F.R. § 208.31(b)). The Court therefore finds that ten days is a sufficient—but not excessive—period of time needed to ensure he is "given a meaningful opportunity to present [his] case." *Mathews*, 424 U.S. at 349.

Accordingly, Petitioner is likely to succeed on his claim that his removal to a third country would violate due process in the absence of a meaningful opportunity to be heard.

Because the first *Winter* factor is met with respect to two of Petitioner's claims, the Court moves on to consider the second *Winter* factor with respect to these claims.[6] *See* Reply at 14-17.

### ii. The second *Winter* factor, a demonstrated likelihood of irreparable harm absent an injunction, is met.

To establish the second *Winter* requirement, Petitioner must demonstrate a likelihood that he will suffer irreparable harm without a temporary restraining order. This Court finds that he has done so.

As a threshold matter, Petitioner has "established a likelihood of irreparable harm by virtue of the fact that [he is] likely to be unconstitutionally detained for an indeterminate period of time." *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). And "it is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Respondents do not contest this prong, so it is conceded. *See generally* Response. Thus, as this Court has already found that Petitioner has a sufficient likelihood of success on the merits of his challenges to his current detention—in part based upon Petitioner's constitutional rights—this Court finds the second *Winter* factor is met.

### iii. The third and fourth *Winter* factors, balancing the equities and considering the public interest, are met.

When, as here, the nonmoving party is a governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). This Court then considers the third and fourth factors—whether the "balance of equities" is in Petitioner's favor and whether an injunction is in the public interest—jointly. *All. for the Wild Rockies*, 632 F.3d at 1135.

The balance of equities appears to tilt in Petitioner's favor. The Government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow the law. *Zepeda v. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983). And "[a]ny additional administrative costs

---

[6] The Court need not address Petitioner's *Zadvydas* claim, *see* Motion at 9-10; Reply at 13, because the Court found that the Petitioner is likely to succeed on his procedural due process claims.

to the government are far outweighed by the considerable harm to plaintiffs' constitutional rights in the absence of the injunction." *Hernandez*, 872 F.3d at 996. "Faced with such a conflict between [the minimal cost to implement additional due process safeguards] and preventable human suffering," this Court finds ample reason to conclude that "the balance of hardships tips decidedly in plaintiffs' favor." *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983). And, for related reasons, an injunction is in the public interest. "Public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Respondents do not contest these prongs. In sum, the third and fourth *Winter* factors are met here.

### IV.  Conclusion

For the foregoing reasons, the Application is GRANTED.

1. Respondents are ORDERED to release Petitioner from custody within 48 hours, and not re-detain him without compliance with 8 C.F.R. § 241.4(*l*)(1), 8 C.F.R. § 241.13(i), and 8 U.S.C. § 1231[7];

2. Respondents are enjoined from relocating Petitioner outside of the Central District of California pending final resolution of this matter;

3. Respondents are enjoined from removing Petitioner to any country other than Cuba, unless the following procedures are met: (1) written notice to both Petitioner and Petitioner's counsel in a language Petitioner can understand; (2) a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for CAT protection prior to removal, including asking Petitioner if he harbors such a fear and notifying him of the option of seeking CAT protection; (3) if Petitioner is found to have demonstrated "reasonable fear" of removal to the country, Respondents must move to reopen Petitioner's immigration proceedings; and (4) if Petitioner is not found to have

---

[7] At the hearing, the Court inquired about the procedure for the return of the Petitioner's personal effects. Counsel for the Respondents described the procedure and explained that it might not be possible to return Petitioner's personal effects within the same time frame as Petitioner's release from detention. He advised that counsel for Petitioner could contact him in the event of any questions or undue delay. The Court advised counsel for Petitioner to work with counsel for Respondents on this and seek additional relief from the Court only as needed.

demonstrated a "reasonable fear" of removal to the country, a meaningful opportunity, and a minimum of fifteen days, for the Petitioner to seek reopening of his immigration proceedings.

4. Respondents shall show cause, in writing, as to why a preliminary injunction should not issue in this case no later than fourteen (14) days of the date of this Order. Petitioner may file a response no later than seven (7) days after Respondents' filing. The parties' briefing on the preliminary injunction should address whether the granting of this TRO renders the PI request, and the habeas petition itself, moot.

5. The parties shall meet and confer and file a joint status report regarding the Respondents' compliance with this Order by February 10, 2026.

IT IS SO ORDERED.

Dated: February 4, 2026.

MAAME EWUSI-MENSAH FRIMPONG
United States District Judge

14